(43 Misc. Rep. 411.)

## LITCHFIELD v. SISSON et al.

(Supreme Court, Special Term, Fulton County. April, 1904.)

1. TRESPASS—BOUNDARIES—NEWLY DISCOVERED EVIDENCE.

In an action for trespass on realty a referee held that one of plaintiff's boundaries was limited by a certain survey made on partition of the land among plaintiff's grantors, and that plaintiff acquired no title beyond a township line established by that survey. *Held,* that plaintiff was not entitled to a new trial on the ground of newly discovered evidence, consisting of proof by a map made prior to the survey first referred to, that the surveyor had incorrectly placed the township line, since the true location of the line was immaterial in view of the referee's decision.

Action by Edward H. Litchfield against George W. Sisson and another. There was a decision of the referee for defendants, and plaintiff moved for a new trial. Motion denied.

Wilson & Wallis (Albert Hessberg, of counsel), for the motion.
Frank L. Bell (Jotham P. Allds, of counsel), opposed.

SPENCER, J. A careful examination of the affidavits presented convinces me that the plaintiff has not been guilty of laches, either in making this motion or in failing to know of the proofs now claimed by him to be newly discovered. The important element of those proofs is the copy of a map of the Macomb purchase, made in 1797 by Charles C. Brodhead, which copy, since the trial, has been found in the possession of one Casimir Constable, a descendant of a former part owner of the tract to which the plaintiff's premises belonged. I think I should assume, for the purposes of this motion, that the original was at one time of record in the office of the Surveyor General of the state of New York, and cannot now be found. A map purporting to have been made by Brodhead is there, but it clearly is not the map to which the field notes of Brodhead, found in that office, refer. Its presence there is likely to mislead even a painstaking searcher, and I am of the opinion that the plaintiff should not be charged with negligence in not discovering the distinction between that map and the correct one.

It is stated in the opinion of the learned referee, and his view finds confirmation in the proofs, that in January, 1800, the then owners, as tenants in common, of tracts Nos. 1, 2, and 3 of the Macomb purchase, caused a survey to be made of those tracts by Benjamin Wright, whereby he divided the same into 60 towns, 27 of which were in tract No. 1; and that the property was partitioned among them pursuant to such survey; that the plaintiff derives his title by mesne conveyances therefrom; that his premises constitute a part of township No. 25, and is the south one-third of that township, lying along the south line of great lot No. 1. The referee found as matter of fact that the line established by Wright as the south line of township No. 25 was marked by monuments, and that satisfactory proof was made that such south line so marked by Wright is substantially the same line which now constitutes the south line of the premises purchased by plaintiff, and which he, upon his purchase, caused to be fenced; that the plaintiff did not, by any of the conveyances, become entitled to any land lying south of that line. It is true the referee discusses at considerable length the

proofs introduced in evidence in respect to the survey and location of the Totten and Crossfield purchase; but this, not as decisive of the rights of the plaintiff, or in order to determine the location of the south line of his premises, but simply as confirmatory to the view taken by him as to the actual location of the line made by Wright, for when he comes to the conclusion of his decision he says:

"For all these reasons I think it clearly established that the plaintiff's line is bounded on the south by the line of marked trees blazed by Benjamin Wright in the year 1800, and that the plaintiff, having shown no trespass north of this line, must fail in this action."

Now, the only purpose which the recently discovered map may serve in the case is to furnish proof that the south line of great lot No. 1, as run by certain prior surveys, and followed or continued by Wright, was erroneous, and that the state, in its conveyance to Daniel McCormick, in 1798, corrected the error by means of the Brodhead survey and map, and conveyed the disputed territory to him. The deed to McCormick does not, in terms, refer to the Brodhead survey, but the identity of date affords strong presumption that it was in fact based upon the Brodhead survey and map; and if the plaintiff, by virtue of his deed, took title to the south line of great lot No. 1, the importance and value of the Brodhead map stand apparent. But the learned referee before whom this case was tried expressly held that, despite the fact that an error was made by Wright in his survey, placing the south line of great lot No. 1 a mile and a quarter north of the true line (which, for the purposes of this motion, we shall assume to be the Brodhead line), it would avail nothing to the plaintiff, because his deed did not convey to him any property south of the line actually fixed by Wright. The learned referee made the case to turn upon this particular point. He did not arrive at his conclusion as to the south line of the plaintiff's premises by determining the true south line of great lot No. 1, nor by determining the true north line of the Totten and Crossfield purchase, but limits the plaintiff's title to the survey made by Wright, and holds expressly that the conveyance to the plaintiff gave him no title to any land outside of that survey, or south of the south line of township No. 25, as fixed by Wright. In view of this decision by the referee, I am of the opinion that any further evidence in respect to a prior survey by the state of great lot No. 1 would be immaterial, and in no way affect the result of the action.

If the referee was right in his holding that the plaintiff was limited by the survey made by Wright, and the lines run by him, it is of no consequence what a prior survey made by the state may disclose as indicating the true south line of great lot No. 1, for the simple reason that the plaintiff, by his purchase, acquired title only to the lands actually surveyed and laid out by Wright. If such survey was erroneous, and the south line of township No. 25 was not made to correspond to the south line of great lot No. 1, the intervening territory would remain in the then owners as tenants in common, and not pass under the deed of partition. I think the judgment in this case must stand or fall upon the correctness of the decision of the learned referee in that regard. If the conveyance included the entire lot, and the grantees took title to its boundaries, the Brodhead map may be of the utmost im-

portance; otherwise it has little or none. But this court on this motion may not consider any theory in respect to the construction of the deed, other than that taken by the trial court, and according to that construction the map, had it been in evidence, would not have changed the result. On this view the newly discovered proofs are immaterial, and the motion must be denied, with costs.

Motion denied, with costs.